**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| LISA WILMOTH, individually; LISA WILMOTH and BO WILMOTH on behalf of their minor daughter EMILY WILMOTH,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br><br>    Defendant. | No. CV-05-1251-PHX-FJM<br><br>**ORDER** |

The court now has before it a "Stipulation Regarding Proposed Terms of Form of Final Judgment" (doc. 82), defendant's memorandum (doc. 83), and plaintiffs' memorandum (doc. 84).

The only issue upon which the parties do not agree remains the question of whether any portion of plaintiffs' counsel's attorney's fees should be attributed to the award of Emily's future medical expenses and deducted prior to the establishment of the reversionary trust. Plaintiffs argue that it would be more equitable if each portion of this court's assessment of damages bore its fair share of attorney's fees. And, in reliance on *Robak v. United States,* 658 F.2d 471 (7th Cir. 1981), plaintiffs contend that we do not have the discretion to relieve the reversionary trust of its fair share of attorney's fees.

1    The government contends that its interests and those of the minor both point in favor 2 of funding the reversionary trust for medical expenses in the full amount of the damage 3 award. In this way, Emily will always have the certainty of coverage for future medical 4 expenses.

5    We reject plaintiffs' contention that the *Robak* case suggests we have no discretion 6 here. *Robak* merely stated that the court could not interfere with the plaintiff's 25% 7 contingent fee. No matter which way we rule on the issue before us now, plaintiffs' 8 counsel's right to attorney's fees under his agreement with his client is not affected. *Robak* 9 does not address the authority of the court to enter final judgment in the proper amount of 10 the award.

11    We are persuaded by the reasoning of *Hull v. United States*, 971 F.2d 1499 (10th Cir. 12 1992), that the court has the inherent power to place a money judgment in a reversionary trust 13 in ways that protect the minor's best interests. As the court there stated "[u]ltimately, the 14 district court has the inherent power to ensure that [the minor] obtains the maximum benefit 15 from his award." *Id.* at 1506.

16    Here the parties have stipulated to a reversionary trust. And while plaintiffs will also 17 be setting up a separate trust for the remainder of the damage award under the supervision 18 of the Superior Court of Arizona in Maricopa County, the proposed living trust attached to 19 plaintiffs' memorandum (doc. 84), devotes more attention to Emily's beneficiaries than to 20 Emily. For example, while the form document is some 54 pages long, only Article IV, 21 consisting of a page and one-half, addresses the administration of the trust during Emily's 22 minority. The document appears to be a boilerplate form intended for another purpose, i.e., 23 a testamentary purpose rather than for the purpose of administering the affairs of a minor 24 during her minority. For example, we were unable to find any discussion regarding what 25 should be a central feature to this trust—the relationship between the trustee and the 26 conservator to be appointed by the superior court. Counsel for plaintiffs and counsel for 27 defendant declined to accept the suggestion that a guardian *ad litem* be appointed under Rule 28 17(c) to protect those interests of Emily that may be independent of the interests of her

1 parents. Mr. Webb, having assumed a fiduciary responsibility for Emily as well as her
2 parents, is encouraged to examine the proposed Emily Wilmoth Living Trust to see whether
3 it is sufficient to protect the interests of Emily. We do not here detail all the issues it raises
4 but, for illustrative purposes, we note that while Section 3.02(a) designates the Bank of
5 America as a successor trustee of Wells Fargo, Section 3.02(b) seems not to acknowledge
6 this and instead permits Bo and Lisa Wilmoth to appoint an individual to serve as her
7 successor trustee.

8 More significantly, we note that the award for lost income should not even be
9 considered for distribution until Emily reaches an employment age. And the award for pain
10 and suffering should not be available for distribution in amounts greater than each year's
11 proportionate share of the total up to Emily's life expectancy. The living trust provides no
12 substantive guidance to the trustee. What protects Emily from improvident distributions
13 during her minority?

14 At all events, we think that the more protective provisions of the reversionary medical
15 care trust as compared to the proposed living trust warrant funding the reversionary trust to
16 the full extent of Emily's future medical expenses. This will maximize the possibility that
17 Emily's future medical expenses will always be provided for notwithstanding the
18 administration of the separate living trust.

19 Accordingly, we are signing the parties proposed final judgment (doc. 82), paragraph
20 D of which will fund the reversionary trust in the amount of $1,500,000.00 and we are
21 signing the order establishing the reversionary trust (doc. 80).

22 DATED this 10th day of May, 2007.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge